Ms. Clark for the appellant, Ms. Lopez for the appellate. Good morning. Good morning. In Trancero v. La Frusa Herrera, Boliviana, this court said, Section 1608 of the FSIA mandates service on the Ministry of Foreign Affairs, specifically the department most likely to understand American procedure. That happened in this case. The Ministry of Foreign Affairs for Zambia received the package required under the FSIA, which was presented to the district court for service process. Does the record identify who it was who signed for the document other than the name? I assume it's a female. Do we know where she worked in the ministry? There is nothing in the record to suggest where she worked in the ministry. Thank you. The documents that plaintiff below relied on to demonstrate that she complied with the requirements of service process primarily is the commercial invoice, which was supplied to the court on a motion for reconsideration. I believe that was document number 33-3 below. It clearly demonstrates that the Ministry of Foreign Affairs was the entity to receive that package. We've previously stated in our brief that there's no case stating that the DHL label is determinative of compliance. And the statute itself does not, in quotation, say head of foreign affairs. It certainly says the head of foreign affairs should be addressed, but the cases below, and I believe even the cases that this court has looked at, the focus has been on whether or not it's the Ministry of Foreign Affairs that's received service process. Many of the cases that have been heard are cases where it's an ambassador that's been served, an inappropriate person who's been served. So despite the point, as you look at the record below, there were many mistakes along the way in terms of service. And so I won't go back over those. But the point at which DHL was used, it's our position that there was full compliance with what the requirement is. Explain to me how there was full compliance? Specifically? Just the men of foreign affairs? I'm sorry? Where you put men period of foreign affairs? There are two places. The first position that, as I pointed out earlier, is exhibit A to our motion for reconsideration. In the docket below, it's document 33-3, which has the commercial invoice in which the consignee name is Ministry of Foreign Affairs. So let's see. Where is it that we have it in R, just so I'm clear? I'm sorry. In the appendix at the bottom, it's A48. Right. Okay. A48. Yes, sir. Okay. So it's addressed to, it says consignee name. Correct. And what else are you referencing? Well, specifically that, and then from the website from the embassy in Zambia, this is the proper address that's given. There's been no dispute with regards to. This is an invoice, though. This isn't the label. This is an invoice, not the label. Correct. It's not the label. So where's the label again? So it has the e-mail address. It has the country. Correct. It has the telephone number. It has the telephone number. And this shows us what? And then the consignee name is Ministry of Foreign Affairs. But this tells me what, just so I know? If I received this, what would I know? If you received that, the Ministry of Foreign Affairs should have this, has received this, should be receiving this package. This is a statement that it was sent to them or that they have received it. That's what I'm trying to be clear. Sent to them. Sent to. So where is the receipt? The receipt is Appendix Page A56. Okay. And there it is signed by an individual, Kadimba. Sorry. The signature is very difficult to read. All right. But it's typed there. And so that shows it was in Lusaka, Zambia. Correct. And it shows the date and time. Correct. Can you tell me what the address label is? That is A52. Okay. When you go online with DHL, you don't have this particular document as your picture. You're filling out a form, and this is the document that is printed out. Had you given up on having the clerk do service at this point? No, this was delivered to the clerk. This is what the district court requires be delivered to the clerk. No, the attorney manual says that you give them the blank DHL form and then you have an affidavit that has the accurate address in it. We didn't have a blank DHL form, and that's why we used the electronic form. You couldn't get a blank DHL form? Not from where our office was at. We would have to actually call them and have them deliver it, and they would have charged us for it. The dismissal below does not specify with or without prejudice, but the court did say this was a final appeal before. Correct. Should we take that to mean it was with prejudice? I took it to mean that, Your Honor. Now, if the dismissal had been without prejudice, would there have been other problems that would have barred you from rebringing? Yes. The plaintiff would have been without a remedy altogether because the statute of limitations of her claims. Yes, would have brought. Okay. Did you ask for another chance in the district court? Specifically in our papers, we did not. I have to admit that. We believe that we have complied, especially in light of some of the lower court decisions, which did not focus as critically on the use of the term head of ministry of foreign affairs. And when you look at the evidence below, which was supplied in the opposition to the motion for reconsideration, the appellee did supply the exhibit from the Abur versus Republic of Sudan. I believe that was the case that we were mostly looking to, which showed that they had filled out an actual form. So those are the distinctions between the two cases. We had an online form. The individual in that case had the paper form. But I think what I take away from Judge Bates' decision below is really a focus on whether or not the plaintiff has followed the procedures. And there's no argument that by the court below that the failure to use the paper form was what was a problem here. It's simply whether men, period, foreign affairs, and looking to the commercial invoice was sufficient enough to be in compliance. The court below determined that it was not. And I believe that receipt is still a factor here. There's no argument below by the appellee that it was never received. And there's no argument that it wasn't addressed to the Ministry of Foreign Affairs. I think the court really focused on the use of the term head of the ministry or minister. And arguably, if you look at the label, 852.1 could certainly interpret MIN to be minister. That's certainly not what I stated in my affidavit. I was very clear about what I was attempting to do when I filled it out online. One thing I'm trying to figure out is if maybe you had the space to say minister of foreign affairs, if that's what you had the space to do or if you had said that's what you meant by MIN, is that what do we do when there's this little bit of ambiguity? We have actual service plus at least ambiguity about the accuracy of the mailing address and at least half of this grew up here where the court's fault. Well, I'm not sure that the mailing address itself was inaccurate. And that was not argued by – it certainly wasn't an issue that the court raised, and I don't believe the appellee has raised it here. And we pointed to, and it's in the appendix, that the address comes directly from the website of the embassy and the Ministry of Foreign Affairs. So I'm comfortable about that. Does the Ministry of Foreign Affairs say to put Embassy of Zambia on there? No, I don't. Because that's sort of the confusing thing. Okay, now I understand the court's question. It doesn't say that. But the Embassy of Zambia in Lusaka is where the ministry is located. And I believe the way that form got filled out when you completed everything online, the focus is what's the building the person who's delivering it, what building are they supposed to go to. And there wouldn't be a separate building for Ministry of Foreign Affairs. They're going to the Embassy of Lusaka or the Embassy of Zambia in Lusaka, yes. It's going to a P.O. box on a building. Yeah, well. That's what's kind of confusing. There's somebody signing for things in a P.O. box? Apparently so. And I checked several times. There's no other address on that website. It's just the P.O. box. And I think you were asking about if – I think that, going back to the earlier part of your question, I don't think the FSIA is very clear in saying that there would be noncompliance if, in fact, it was just addressed to minister. And the reason I say that is because, again, going back to the quote from this court's decision in Transaria, the idea is that the people who understand the procedures of this court are deemed to be the minister of foreign affairs. And so if, in fact, I had an affirmative to put minister, that should have been considered compliance. And, therefore, I think if someone received that document and MIN was understood and the alternative was misunderstood, I don't think they would have signed for it. And so I think that's part of the reason why I argue that receipt, I think, is important. And when you look at Judge Bates' decision below in the Averro case, I think he's very conscious about the fact that there's no second guessing in terms of compliance if there's no question about receipt. And I would like the court to at least give that some consideration in light of these facts here. What about the proposition that Congress put the words head up because, otherwise, there's immunity and concern about the Vienna Convention, et cetera. The fact that somebody in a ministry receives it is different from it being received by the head of the ministry. I understand the question, and I think, respectfully, I maybe disagree a little bit in terms of the congressional statute and whether head up was a requirement. I understand that. Well, it's in there, right? I understand. It definitely is. I'm not arguing that point at all. Right. I think, and that's why I go back to the argument that minister, I think there's a presumption that the minister is the head up. I don't think anyone would second guess that particular point. All right. And just as a fact, going to the facts in this case, it's never really clear when the minister changes or who the minister is. And the website itself, I think, is completely silent about the name of the individual. The attempt to try to identify that person was clearly there. We made that attempt and used what information we could see on the Internet. Do we know how big the Ministry of Zambia is? I don't. How many employees? I mean, I'm just, the hypothetical is there are 5,000 employees in the ministry. And this is the lady whose name starts with Z, you know, goes to the post office box and picks up a lot of mail and signs for it. And, you know, she works down in the bowels of the ministry. And who knows what happens to her. As distinct from Congress saying, almost as a respect from one sovereign to another, that we understand you have immunity, but when suit is to be allowed, we want to be certain that the head of the ministry is aware of this. And you can think of a number of reasons why Congress might be concerned about that. We're engaged in negotiations with that country on some very sensitive matters, and all of a sudden it's flooded with litigation, all those sorts of things. So it's not as though Congress arguably didn't think about this question of who precisely should receive service. As distinct from where, as far as domestic service is concerned, we allow for other forms. Actual notice, you know, good enough, even if not perfect. But now we're in a different realm. And I thought that's what our court was getting at when it talked about strict compliance. I think that the strict compliance in this instance is more than what is absolute, is required. That where Ministry of Foreign Affairs and MIN of Foreign Affairs is there, I think the concern the court is raising is whether or not the use of the term head of Ministry of Foreign Affairs would have assured that only that person would have received that document. Or the word minister. Or the word minister. And given the fact that, as you point out, there's a P.O. box, I doubt seriously that the Minister of Foreign Affairs goes to that P.O. box to obtain those documents as a first step. So the presumption is that there is certainly someone who is dispatched, who's not the head of the Ministry of Foreign Affairs, but who may be responsible to that individual. Sure. Responsible to the people who are running that ministry. And one may certainly argue that there are procedures inside that office that are to be followed when a DHL envelope from the United States arrives. And so I don't, while I understand what the court is asking and about the assurances that Congress was seeking, Congress can only go so far in terms of what it wrote in the statute to assure that only the Ministry of Foreign Affairs or the minister or the head of the ministry would receive it. Because once it's received at that P.O. box, it's out of our hands as to who does receive it. But we accept, if we put head of Ministry of Foreign Affairs, we accept that whoever arrives at that P.O. box is going to get it there. There are some cases where that hasn't occurred. Well, all right, let me take you to your second point. We have cases that say where there's a reasonable likelihood that this problem could be cleared up very easily. It's an abuse of discretion to dismiss. What would you say on that? I think that what is distinguishable here, and I would probably have thought much longer about appealing this decision if none of the procedures had been complied with. And albeit it took us a while to get there, the procedures were complied with. And I think that the court, especially given what had happened early on, maybe should have exercised some discretion to allow us to address the envelope the way that the court thought it should be addressed. Especially since, again, there was no argument that it was not received. There's no argument that the person that signed for it wasn't someone who gave it to the Minister of Foreign Affairs or the head of the Ministry of Foreign Affairs. And I think if those arguments... But really, that point's never addressed, is it, as to whether it was ever given to the minister? There's no argument that's ever been addressed or raised by either side, exactly. In either area? Yeah. I think all of what we have assumed because of who signed for it, that it was actually received by the Ministry of Foreign Affairs. And they haven't disputed that? They have not disputed that. All right. Thank you. Thank you. All right. Thank you. Counsel for Adelaide? Yes. Just a few things. Can you answer one question up front? If they had spelled out minister instead of M-I-N period, that's the only change. What would the answer be? Would that count? Had they put it in the addressee? Had they addressed it to head of the Ministry of Foreign Affairs? My question is exactly the same thing where it says contact. They said minister of foreign affairs. If that is, in fact, the head of the Ministry of Foreign Affairs, sure. But it has to be addressed. What do you mean? What is the name of the head of the Ministry of Foreign Affairs in Zambia? I don't know. Not the personal name. Is it the Foreign Affairs Ministry? I don't know. Really? You represent the Embassy of Zambia and you don't know? No. Wait a minute. The head of the Ministry of Foreign Affairs can have multiple names depending on the country. I'm asking you for Zambia. And I don't know. Standing here today, I don't know the answer. Wow. Okay. Your position is if it said minister of foreign affairs, that would not be sufficient. No, that's not my position. My position is if that is the head of the Ministry of Foreign Affairs of that particular country, it is proper. If it is addressed and discussed. So the only difference here is that it's M-I-N period instead of M-I-N-I-S-T-E-R. That is in the contact portion, not in the addressing portion. I mean, I guess, why isn't that the same thing as the attention part of a letter? Because it's not addressed to. And I think that strict compliance is required as established by Trans-Ero. Well, Trans-Ero, to be fair, said serve the Ministry of Foreign Affairs. Well, it was quoting the statute. And the statute says. It said twice, serve the Ministry of Foreign Affairs. So she's to be forgiven. If we're confused, I guess she's to be forgiven for being confused as well. I think that the statute is plain on its face. Well, the statute also says it's the clerk of the court that's supposed to get this stuff right. And if it's the clerk of the court, well, that's exactly what you want to do. Yes. Address and dispatch by the clerk of the court. So if the clerk of the court is the one that gets it wrong, then. But the address has to be provided by the attorney. And the attorney has ultimate responsibility for ensuring compliance. Where does the statute say that? Well, it doesn't say that directly in the statute. But in this record, counsel provided a name and an address. I mean, this is just a comedy of arrows almost. And the unfortunate part is we're sitting here and the case was dismissed. The first service was just wrong by the clerk's office. The second proposed service was correct, except the district court made a change that made it incorrect. I would add that it actually wasn't completely correct. It didn't comply with the implementing regulation 2293.2, the CFR. Saying what? That, let me. No, you say it didn't comply. It didn't comply how? It didn't comply because there was no notice of suit as required by 22CFR93.2. There is no notice of suit. The complaint is attached. No, there have been cases that have been dismissed for not following precisely the language set forth in the annex, set forth in 22CFR93.2. And that particular. So when the appellants suggest that when they contacted your client, they were told to send it to the embassy here in D.C., that's not implausible based on what we heard this morning. I was not part of that phone call. I was not even aware of that phone call. But you're telling us today you don't know the answer to Judge Millett's question and you are here representing. But my point is. And my point is if counsel representing the defendant doesn't know the answer, it's interesting to me that we've got a situation where on a technical point, the district court gets it wrong, the clerk's office gets it wrong, and the plaintiff had it right at one point, except you're saying now didn't comply with these regulations. That's in our brief as well. How can we make this easier for everybody? I'm sorry. How can I make what easier? I'm sorry. How can this be easier? Well, if they had simply addressed it to the head of the Ministry of Foreign Affairs, using that precise terminology. As they initially did. As they initially did in the original without the compliance of 22 CFR 93.2, I would say. And what precisely did they need to do under that regulation? Under that regulation, it requires a notice of suit as prescribed in Section 1608A. And what would that notice have said? It would have contained, quote, relevant, excuse me, title of legal proceeding, full name of court, case or docket number. That's the complaint. Okay. Name of foreign state. That's the complaint. Identity of other parties. That's the complaint. And then specific language that has to be quoted. A response to a summons or complaint is required to be submitted to the court not later than 60 days after these documents are received. And I'm cutting out a lot of language. And then another provision about questions related to state immunities and to the jurisdiction of the United States courts over foreign states. The clerk's office is supposed to receive from counsel all of the documents that the plaintiff provided here, plus check all of this. Correct. All right. Do you know whether the local rules of the district court have those procedures? I don't know sitting here today, but I will say that this is all very well laid out in the law, in the case law, and has been successfully done in many other lawsuits. So it's, in other words, it's not a mystery. Plus, we specifically notified. None of this is a mystery. But we have just errors being made by very knowledgeable people along the way. And we specifically alerted Ms. Barrow to the proper provision to be followed, including the implementing regulation CFR 93.2. Well, she says she got some information that was wrong. All right. Then she got some information that was right. Then the clerk's office didn't do what it was supposed to do, so she tried to solve the problem by mailing it. I mean, I'm just trying to understand why we're in this situation where Congress writes a statute, and presumably if you follow the words of the statute, you're home free. Well, we were the ones who actually alerted the court to the problem that was made. Well, good for you. But the point is, why are we here on this case almost? I mean, it's clear that this is a minor thing that could be corrected, right? Well, so let me also lay out the timeline. There was an amendment complaint that was filed, which we then moved to dismiss. At that time, the service had been made to the embassy here in D.C. And that was a fault of the court? That was a fault of the court. No, no, no, no. This was the amended complaint. The one that she admits was erroneous in December 2013. So there was a September 2013 attempt, which was made erroneously to the embassy here in D.C. Then we moved to dismiss the original complaint, and we said, no, actually, you need to follow 1608A and you need to follow the implementing regulation. And then there was a subsequent complaint filed and a subsequent attempt at service made through Ms. Clark, and that one was again sent to the embassy here in D.C., despite us saying specifically follow 1608A and follow the implementing regulation. And then there was another one after that that, again, was the court's mistake, or the court lost it or something like that. That one was never made. No, that was the court's fault. So we have twice that the court is the one that got it messed up or the clerk's office failed to do what the statute tells the clerk or the court to do. But the court only, the district court. And then we have this. So this is the fourth time. Right. So what happens? And again, we've got this Minister of Foreign Affairs. At least my understanding is that is actually the title of the Foreign Affairs Minister in Zambia. Well, we're focusing specifically on the addressee, the two lines. Okay. I don't see that in the statute or precedent. I'm sorry. Can I add recognition once again? What page are we on in the DA? 52, I think. And also 31. So the timing, back to the timing. There was an amended complaint. We moved to dismiss based on that faulty December 2013 attempt, which she admits was faulty, by the way. Then she undertook to have the February 2014 service attempt as our motion to dismiss was pending. So we never had a chance to move to dismiss on that one. The court itself ruled that it was faulty. So we didn't come forward and, you know, she talks about what we did and didn't do. We didn't come forward on that. We had already moved to dismiss on this faulty December. If we were to hold that the statute doesn't actually dictate whether you have them all lined up in a single addressee or if you have the right P.O. box, the right country, the right city, the right zip code, country code, that, and then you have attention, Minister of Foreign Affairs, and that's to the right. If we were to hold that that complied with the statute, would you lose? If the words Embassy of Zambia were not there? No. That's exactly what she has here. And I'm going to change it from contact to attention, Minister of Foreign Affairs. I think she would lose if the addressee is Embassy of Zambia. Let me say this is not the first case I've sat on where there is confusion in the embassies about proper service under the Foreign Service, the Foreign Sovereign Immunities Act. All right. So it is not incomprehensible to me in this case that the embassy said mail it here. I can give you the citation to another case where the embassy said mail it here, and that was incorrect. And that's why I'm trying to figure out what is it. Do the district courts' internal rules need to be clarified on this? Are there regulations that need to be promulgated? Because this is taking up a lot of time and energy, and we're not moving forward. We seem to be just repeating these errors. Perhaps clarification would be well taken, but I guess what I'd say about the phone call is, and what I was intending to say earlier, which I wasn't doing clearly enough, because I wasn't part of the phone call, I don't know whether they said, I have a lawsuit that I want to send you. What do I do? Maybe they just said, I have a package. Should I send it to? Where should I send it? You know, because we weren't on that phone call and there's no evidence in the record about what specifically was asked, I think it's unfair to assume that the person was responding, perhaps just a secretarial person, not even a diplomat with authority to say where to serve documents. I understand, but we don't want mini-trials on who said what to whom at this stage. Howard, given that there's ambiguity, given that the court messed it up twice, given that there's at least an open question whether the statute allows you to have an attention line or a contact line to satisfy, how would you be, your client, be prejudiced, really, if she's clarified and said, go get it right this time. Clerk, here's what it should look like. Go do it. Is there any real prejudice to you? Yes, I think there is, because this is a foreign state, and there has been a lot of time expended by the foreign state, a lot of attorney's fees expended, trying to help them get it right originally, and then they still didn't follow the procedure. Trying to help them get it right. They could just waive. They could just waive this. Well, true. Very true. But it's an immunity and a privilege, and so, you know, waivers. But every case is going to have that exact same answer, so that it's a sovereign with an immunity. So is there any distinct prejudice to your client from, let's get it right with one more shot? I think there's been a lot of time expended. That's the number one prejudice. How does that prejudice them? Because we've been through this multiple times. We've had to move to dismiss multiple times. We've told them what statute to follow. Attorney's fees. That's the prejudice you're saying. And the time. Time? What time? There's been a lot of time, and this is causing a lot of angst in Zambia. Angst in Zambia? Absolutely. Do we have any information in the record? There's no information in the record. No, of course not. But you asked me the question, so I wanted to be clear. No, but only tell me what's in the record. I should think we have everything in Zambia. Yes, this is not a major thing on the foreign minister's agenda. My answer would be also that this statute is based on reciprocity, and so we should also take into account that what we do here will potentially be replicated abroad, and I think that giving a counseled, specifically informed litigant reasonable opportunity, but not unlimited opportunity, is very smart for foreign relations, as well as fits within the contours of the statute. Anything further? No, thank you. Thank you. Counsel for appellant? All right. Any questions? No. All right, we'll take the case under advisement. Thank you, counsel.
judges: Rogers, Millett, Sentelle